Filed 7/21/16  P. v. Stringfellow CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT JAMES STRINGFELLOW,<br><br>    Defendant and Appellant. | F070251<br><br>(Super. Ct. No. CRF43937)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Nicholas M. Fogg, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Gomes, Acting P.J., Detjen, J. and Smith, J.

## INTRODUCTION

Defendant Robert James Stringfellow was convicted of assault with a deadly weapon. At trial, the victim did not testify but a statement she made to officers approximately 15 minutes after the assault was admitted pursuant to Evidence Code[1] section 1240. Stringfellow contends admission of this statement was error requiring reversal of his conviction. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The afternoon of April 23, 2014, Stringfellow arrived at Samantha Crosby's trailer. Crosby asked him to leave. Instead, Stringfellow pushed Crosby against the trailer's exterior wall, punched her near the collarbone, and struck her collarbone with the handle of a scythe. Crosby felt the scythe's blade pressing into her, but she grabbed the scythe and held it away. Crosby ended up on the ground, with Stringfellow hunched over her.

Kalen Collins, Crosby's neighbor, was in his trailer when he heard screaming. He went outside and saw Crosby on the ground with Stringfellow hunched over her; he shouted at them. Stringfellow got up, walked to his truck, and drove away. Collins saw Stringfellow place an item that looked like an axe or a garden tool into his truck before driving away.

As Stringfellow left, Crosby ran toward Collins, "frantic—like in a run," asking him to call 911. Collins called 911 immediately and sheriff deputies arrived about five minutes later. When Corporal Paul Speers and Deputy Ashley Grossen arrived, Crosby appeared to have cried recently and looked upset. The deputies also noticed redness on her chest near the collarbone.

Grossen began speaking with Crosby while Speers stood 10 to 15 feet away with Collins; Speers could hear Crosby and Grossen. Grossen asked Crosby what happened. Crosby stated Stringfellow came to the trailer looking for her boyfriend; Stringfellow hit

[1]References to code sections are to the Evidence Code unless otherwise specified.

2.

her twice while holding a scythe.  After this initial statement, Grossen began asking follow-up questions.  After about five minutes of questioning, Crosby was agitated; Grossen spoke to Crosby for about 15 minutes total.

Stringfellow was stopped later that day and deputies found a scythe in the back of his truck.  Stringfellow was charged with a violation of Penal Code section 245, subdivision (a)(1), assault with a deadly weapon.  It also was alleged that Stringfellow had suffered a prior strike conviction, served four prior prison terms, and was subject to a Penal Code section 667, subdivision (a)(1) enhancement.

Crosby was unavailable to testify at the time of the trial.  Prior to empaneling a jury, the trial court conducted a section 402 hearing to determine whether the People could introduce at trial any of the statements made by Crosby to the deputies on the day of the incident.

Speers testified at the section 402 hearing.  The day of the incident, Speers was training Grossen, who recently had been hired.  Speers and Grossen were dispatched in response to the 911 call and arrived after about five minutes.  When they arrived, Crosby and Collins were standing together; Crosby appeared to have been crying and looked upset.  Speers noticed redness near Crosby's collarbone.

Grossen spoke with Crosby.  Although Speers was standing about 10 to 15 feet away with Collins, Speers could hear the conversation between Grossen and Crosby. Grossen asked Crosby to "tell her what happened."  According to Speers, Crosby stated that "Stringfellow had come back to the residence, was told that [Crosby's] boyfriend was not there, and that [Stringfellow] came after her and pushed her up against the trailer and hit her twice."  Crosby stated he hit her two times while holding a wooden handle with a scythe blade attached to it.

Crosby stated she had seen Stringfellow pull up to the trailer.  Crosby told him her boyfriend was not there, but Stringfellow did not listen.  Stringfellow approached her with the scythe in his hand and pushed her up against the trailer.  She hunched over and

3.

grabbed the scythe. Stringfellow hit her twice and she fell to her knees. Stringfellow kept telling her to let go, but she didn't because she was afraid he would strike her with the scythe. Crosby didn't let go until she felt she could run away, and then she ran to her neighbor's trailer.

Crosby stated Stringfellow had come looking for her boyfriend because her boyfriend and Stringfellow's nephew had been in an altercation a couple of weeks prior. Grossen and Speers asked follow-up questions to obtain further clarification about the description of the weapon, how many times Crosby was hit, and whether Crosby needed medical attention.

In response to questions from the trial court, Speers stated Crosby appeared to have been crying and was upset when the deputies arrived. At times during the questioning, Crosby became frustrated, would start to calm down, but then would become agitated again.

The trial court found Crosby had been crying, was upset, and was emotional when she made the initial statement to Grossen in response to the question of "what happened." The trial court concluded the initial statement was a spontaneous statement from Crosby. Pursuant to section 1240, deputies could testify to Crosby's statements that Stringfellow came over, came at her, assaulted her, hit her, and had a weapon in his hand and her initial description of that weapon. The trial court also held the admission of Crosby's initial statement pursuant to section 1240 was not a violation of Stringfellow's confrontation rights.

At trial, Collins testified to having heard Crosby screaming and seeing Stringfellow hunched over her. Collins stated that when Crosby ran to him screaming for him to call 911, he did so immediately and deputies arrived within five to 10 minutes.

Grossen testified that when she arrived, Crosby appeared "shaken up" and looked worried. She asked Crosby what happened, and stated Crosby told her Stringfellow came to her trailer; pushed her against the wall while holding the scythe; and twice hit her near

4.

her collarbone, once with a closed fist and once with the handle of the scythe. Crosby said she could feel the blade of the scythe pushing into her and she grabbed it to hold it away.

During Grossen's testimony, defense counsel objected twice on the basis of hearsay. After the first objection, the trial court asked Grossen if she had asked specific questions or just said "What happened?" Grossen responded that initially she simply asked what happened and Crosby responded. The trial court overruled the objection. Grossen then proceeded to state what Crosby had told her.

Defense counsel's second objection was raised after the People asked whether Crosby said anything in her "initial statement" that she tried to protect herself. In response to defense counsel's second objection, the trial court asked if all the statements Grossen was testifying to were in response to the "question of what happened." Grossen replied that after asking what happened, she did have to ask "then what," but all of the statements from Crosby were part of the "initial, 'This is what happened.'" The initial statement took two to three minutes; after that, Grossen had to ask specific questions. Her interview of Crosby lasted at least 10 minutes total.

The trial court overruled the objection. The trial court then immediately instructed Grossen to limit her testimony to "that initial statement, the two to three-minute statement."

Testifying later in the trial, Speers said Crosby initially "appeared to be upset," looked like she had been crying, and was "[o]bviously a little shaken from the incident." Later in conversation with the deputies, Crosby was "still a little upset" but had also become "agitated" at the deputies "as if she felt like she was being questioned" like a suspect. When Speers was asked about specific statements made by Crosby, the trial court sustained a hearsay objection.

Later, Stringfellow testified in his own defense. Stringfellow claimed after he knocked on Crosby's trailer, Crosby came out screaming at him and threatening to shoot

him.  Stringfellow stated he then picked up a scythe, Crosby grabbed for the scythe, and there was a "tussle."

The jury convicted Stringfellow of the felony assault count.  Stringfellow admitted the Penal Code section 667, subdivision (a) enhancement.

Stringfellow moved for a new trial on the basis admission of the section 1240 evidence was error.  The trial court denied the motion.

The trial court sentenced Stringfellow to a term of three years for the assault, doubled to six because of the prior strike offense, plus five years for the Penal Code section 667, subdivision (a) enhancement.  Stringfellow filed a timely appeal.

## DISCUSSION

Stringfellow contends it was error to admit the section 1240 evidence.  He asserts the trial court's ruling on the section 402 hearing was error  and the admission at trial was error  because the evidence does not establish Crosby's statements were spontaneous and made while she was under the excitement of the events.  He also contends the trial court erred in denying his motion for new trial because it was error to admit the section 1240 evidence.

### *Section 1240*

Section 1240 provides that evidence of a statement is not made inadmissible by the hearsay rule if the statement purports to "narrate, describe, or explain an act, condition, or event perceived by the declarant" and was "made spontaneously while the declarant was under the stress of excitement caused by such perception."  For the statement to be admissible, there must be some occurrence startling enough to produce nervous excitement and render the statement spontaneous and unreflecting; the utterance must have been made before there was time to contrive and while the nervous excitement may be supposed still to dominate; and the statement must relate to the circumstance of the occurrence.  (*People v. Farmer* (1989) 47 Cal.3d 888, 903.)

The trial court's decision to admit evidence under section 1240 is reviewed for abuse of discretion. (*People v. Phillips* (2000) 22 Cal.4th 226, 236.) The mere passage of time between the occurrence and the utterance is not dispositive; long periods of time have been found not to preclude application of section 1240. (See, e.g., *People v. Brown* (2003) 31 Cal.4th 518, 541 [two and one-half hours]; *People v. Raley* (1992) 2 Cal.4th 870, 893-894 [18 hours]; *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1713 [one to two days].) In addition, answers given in response to routine, nonsuggestive questions from law enforcement do not bar application of section 1240. When an officer asks a victim "Who did this?" the response has been held admissible under section 1240. (*People v. Morrison* (2004) 34 Cal.4th 698, 719.)

*Analysis*

Here, during the section 402 hearing, Speers testified Crosby was upset and had been crying when the deputies arrived. Speers stated they arrived about five minutes after being dispatched. Speers heard Grossen ask Crosby what happened. Speers testified to what he heard Crosby say in response to the initial question.

During trial, Collins stated when Crosby ran to him screaming for him to call 911, he did so immediately and deputies arrived within five to 10 minutes. Grossen testified when she arrived, Crosby appeared "shaken up" and looked worried. She asked Crosby what happened and stated Crosby told her Stringfellow came to her trailer, pushed her against the wall while holding the scythe, and hit her twice near her collarbone, once with a closed fist and once with the handle of the scythe. Crosby said she could feel the blade of the scythe pushing into her and she grabbed it to hold it away.

Grossen testified that after asking what happened, she did have to ask "then what," but all of the statements she testified to from Crosby were part of the "initial, 'This is what happened.'" The initial statement took two to three minutes, out of a 10-minute interview. The trial court instructed Grossen to limit her testimony to "that initial statement, the two to three-minute statement."

7.

At the conclusion of the section 402 hearing, the trial court found Crosby had been crying, was upset, and was emotional when she made the initial statement to Grossen in response to the question of "what happened." The trial court concluded the initial statement was a spontaneous statement from Crosby. The trial court overruled the hearsay objections made during the trial to this testimony.

Both at the section 402 hearing and at trial, the testimony presented established Crosby was upset or shaken up from the assault at the time she was interviewed by Grossen; the interview took place about five to 10 minutes after the 911 call; and the statements made by Crosby that were admitted were in response to nonsuggestive questions such as "what happened" or "then what." The passage of time between the assault and the statements to Grossen does not preclude their admission. (*People v. Brown*, *supra*, 31 Cal.4th at p. 541.) Neither does Grossen's eliciting the statements by asking what happened; when a deputy asks a victim nonsuggestive questions, the response has been held admissible under section 1240. (*People v. Morrison*, *supra*, 34 Cal.4th at p. 719.)

The factual situation in the instant case is very similar to that of *People v. Saracoglu* (2007) 152 Cal.App.4th 1584, a domestic violence case where the victim was assaulted at home. She collected her child and went to the police station. About 30 minutes after the assault, she spoke with officers and told them the defendant had assaulted her. At the time she spoke with officers, the victim appeared still to be scared and upset. (*Id.* at p. 1587.) The victim failed to appear and testify at trial, but the officer testified to her statements. (*Ibid.*) The defendant challenged the admission of the victim's statements, contending it was error to admit them pursuant to section 1240. The appellate court held the statements were properly admitted. No more than 30 minutes had passed since the incident, the victim was still upset from the incident, and the victim's statements were made in response to nonsuggestive questions. (*Id.* at pp. 1589-1590.)

As the California Supreme Court stated in *People v. Brown*, *supra*, 31 Cal.4th at page 541, "'Neither lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity *if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance*.'" The trial court found the statements made by Crosby it allowed to be admitted met the requirements of section 1240. The evidence is ample to support the trial court's finding, and we conclude the trial court did not abuse its discretion in admitting the evidence. (*People v. Phillips*, *supra*, 22 Cal.4th at p. 236.)

### *Conclusion*

Because the evidence supports the trial court's decision to admit some of Crosby's statements pursuant to section 1240, specifically those statements made initially in response to nonsuggestive questions while Crosby was upset and emotional, the admission of the evidence is not an abuse of discretion. (*People v. Phillips*, *supra*, 22 Cal.4th at p. 236.) Since the section 1240 evidence properly was admitted, Stringfellow's contention the trial court erred at the section 402 hearing and during trial by not excluding the evidence is without merit. His contention the trial court erred in not granting his motion for new trial based on erroneous admission of section 1240 evidence also is without merit.

## DISPOSITION

The judgment is affirmed.

9.